UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

GALAL MOHAMED MOSAED ROBAID,

                 Plaintiff,           **MEMORANDUM & ORDER**
                                           23-CV-485 (EK)

        -against-

ALEJANDRO MAYORKAS, Secretary of
Homeland Security; U.S. DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES;
UR JADDOU, Director of USCIS; SUSAN
QUINTANA, Director, USCIS New York
Field Office; and U.S. DEPARTMENT OF
STATE,

                Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Galal Mohamed Mosaed Robaid brings this

action against the Department of Homeland Security, U.S.

Citizenship and Immigration Services ("USCIS"), Department of

State ("State Department"), and certain leaders of those

agencies.[1]  He alleges that defendants wrongly denied his

petitions for visa eligibility for his noncitizen children, in

violation of the Administrative Procedure Act ("APA") and the

Equal Protection Clause of the Fifth Amendment.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristi Noem,
Secretary of the Department of Homeland Security; Joseph Edlow, Director of
U.S. Citizenship and Immigration Services; and Joseph Cardinale, Acting
Director, USCIS New York Field Office, are automatically substituted for
their predecessors as defendants in their official capacities.  The Clerk of
Court is respectfully directed to update the caption accordingly.

Defendants now move to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment.

## I.    Background

Review of agency action under the APA "is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).[2]  This includes any documents necessarily considered by the agency. *Saget v. Trump*, 375 F. Supp. 3d 280, 340-41 (E.D.N.Y. 2019).  We take the following facts from the certified administrative records and the amended complaint.

Robaid is a naturalized U.S. citizen.  In June 2015, he filed two Immigrant Petitions for Alien Relative on Form I-130 with USCIS.  Amended Complaint ("Compl.") ¶¶ 1, 352, ECF No. 21.  Form I-130 allows a U.S. citizen or permanent resident to ask USCIS "to classify [a] noncitizen as an immediate relative, and, if USCIS approves the petition, then the noncitizen-relative may apply for an immigrant visa." *Alhariri v. Blinken*, No. 22-CV-1036, 2025 WL 1434317, at *1 (E.D.N.Y. May 19, 2025) (citing *Dep't of State v. Muñoz*, 602 U.S. 899, 904 (2024); 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A), 1201(a), 1202(b)).  Robaid filed the petitions on behalf of two minors —

---

[2] The Certified Administrative Records ("CARs") in this case are appended to the defendants' motion.  *See* Bashar CAR, ECF No. 27-2; Ibrahim CAR, ECF No. 27-3.

Bashar Mohamed Nagi Almuraisi and Ibrahim Mohamed Nagi Almuraisi, referred to herein as Bashar and Ibrahim.  On the application, he identified Bashar and Ibrahim as his *stepchildren*.  Bashar CAR 37; Ibrahim CAR 38.[3]

In support of the petitions, Robaid submitted Yemeni passports and birth certificates bearing the minor beneficiaries' names.  Consistent with Robaid's status as a step-parent, the birth certificates listed Robaid's wife Asmaa as the mother and one Mohamed Nagi Almuraisi ("Almuraisi") — who was identified as "deceased" — as the father of both children. Bashar CAR 49; Ibrahim CAR 50.[4]  Robaid also submitted a marriage registration from the Yemen Ministry of the Interior documenting his own marriage to Asmaa and a death certificate for Almuraisi. Bashar CAR 54, 58; Ibrahim CAR 55, 59.  The marriage registration  indicated that Robaid and Asmaa married on July 22, 2007, *after* Bashar's and Ibrahim's birthdates.  Bashar CAR 54; Ibrahim CAR 55.

Robaid also submitted his own sworn statements averring, among other things, that Bashar and Ibrahim were his stepchildren.  *See* Bashar CAR 37, 40-41; Ibrahim CAR 38, 41-42.

---

[3] Page numbers in this order refer to ECF pagination within a particular exhibit, rather than the exhibit's native pagination (if any appears).

[4] The Court cites to the notarized translations of the original documents.  *Cf. Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.*, 746 F. Supp. 3d 69, 78 (E.D.N.Y. 2024) (noting the well-established rule that a foreign-language document "is generally inadmissible unless accompanied by a certified English translation").

USCIS approved the petitions on December 30, 2016.  Bashar CAR 10; Ibrahim CAR 13.

Following the approvals, USCIS interviewed Robaid and Asmaa in connection with the children's visa applications. During the interviews, in 2017 and 2019, both Robaid and Asmaa indicated that the children were Robaid's *biological* children, not his stepchildren.  *See* Bashar CAR 13, 36; Ibrahim CAR 14, 37.  Based on this inconsistency, USCIS issued "Notices of Intent to Revoke" the I-130 approvals.  Bashar CAR 12-14; Ibrahim CAR 34-36.  The notices requested additional documentation and explanation, and indicated that, on the existing record, the basis of the petitions could "no longer be established" because "the parent-child relationship is not valid."  Bashar CAR 12-14; Ibrahim CAR 34-36.

In response, Robaid provided new documents that, in his estimation, "corrected" the prior documentation.  Compl. ¶ 154.  This included new birth certificates identifying Robaid as the children's biological father; a marriage contract between Robaid and Asmaa, bearing a different (earlier) date from the marriage contract he had previously submitted; and two judgments from the Aldhala Primary Court in Yemen that purported to "correct" the names on the previously submitted passports and birth certificates.  Bashar CAR 5, 20, 22, 24, 26, 28; Ibrahim CAR 5, 21, 23, 25, 27, 29.

4

On June 29, 2020, USCIS revoked the petition for Ibrahim, stating that the new documentation did not "prove the claimed relationship as a step-child" and that Robaid had "not met [his] burden of proof in demonstrating the beneficiary's eligibility by a preponderance of the evidence."  Ibrahim CAR 11.  On July 1, 2020, USCIS revoked the petition for Bashar as well.  Bashar CAR 10.  In their revocation letter, USCIS reported that Asmaa told the interviewer that Robaid had "lied on the petition to cover up the manner in which [he] received [his] lawful status in the United States by using and submitting fraudulent documents," and that the death certificate for Almuraisi appeared "fraudulent" because Robaid is actually "Mohamed Nagi Almuraisi."  *Id.*

Robaid filed this action, claiming that the petitions were arbitrarily denied because his children are indeed his biological children rather than his stepchildren.  *See* ECF No. 1.  He did so without appealing to the BIA, as the law permits him to do.[5]  In March 2023, while this action was pending, USCIS

---

[5] "[I]t is undisputed that the INA and its implementing regulations do not require Plaintiffs [challenging the denial of I-130 petitions] to exhaust their administrative remedies before seeking review in federal court."  *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (citing 8 C.F.R. § 103.3(a)(ii), which provides that a party "may" appeal to the BIA); *see also Schreiber v. Cuccinelli*, 981 F.3d 766, 785-86 (10th Cir. 2020); *Gonzalez v. Mayorkas*, 762 F. Supp. 3d 570, 579 (S.D. Tex. 2025).  "This is because Plaintiffs do not appeal an order of removal" in these circumstances, but rather the denial of I-130s.  *Bangura*, 434 F.3d at 498.  "In contrast to orders of removal, the INA does not require [petitioners] to appeal denials of [I-130s] to the BIA before seeking relief in federal court."  *Id.*

vacated the revocations and reopened the petitions.  It subsequently issued "Notices of Intent to Deny," indicating that the agency had been unable to determine "whether or not the beneficiar[ies] who [are] allegedly now listed" with the surname Robaid are "in fact the same individual[s] as the beneficiar[ies] who w[ere] listed on the instant Form I-130 Petition[s]" with the surname Almuraisi.  Bashar CAR 5; Ibrahim CAR 5.  Robaid did not respond to this notice, and USCIS proceeded to deny the I-130 petitions.  Bashar CAR 2-3; Ibrahim CAR 2-3.  On April 8, 2024, Robaid amended the complaint in this action.  ECF No. 21.  This amended complaint is now the operative pleading.

Robaid brings suit under the APA, alleging that USCIS's decision to deny his petitions was arbitrary and capricious.  He claims that the defendants "failed to follow existing procedures prescribed by the INA, implementing regulations, and the USCIS Policy Manual" and, in the process, exceeded "the scope of the inquiry necessary for approval on an I-130 petition."  Compl. ¶¶ 396-397.

Robaid also brings a claim under the Equal Protection Clause of the Fifth Amendment, arguing that under USCIS Policy Memorandum PM-602-0064 (hereinafter the Yemen Guidance Memorandum) and the policies that have succeeded it, the agencies subject Yemeni-American petitioners to "separate,

6

distinct, and more stringent policies, procedures, and practices," motivated by a "belief that all Yemeni petitions should be treated as fraudulent until proven otherwise." *Id.* ¶¶ 411, 418.

Robaid seeks a declaration that his children are "eligible for the I-130 Petition benefits as children of a U.S. Citizen" and injunctive relief. *Id.* ¶¶ 399, 438. Defendants have moved for dismissal under Rules 12(b)(1) and 12(b)(6), and, in the alternative, for summary judgment under Rule 56.

## II. Standard of Review

The government contends that Robaid lacks standing to bring an equal-protection claim; this implicates the Court's jurisdiction. To survive a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court must have "the statutory or constitutional power to adjudicate" the case. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015). The plaintiff bears the burden of establishing subject-matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but the court is not to draw inferences from the complaint favorable to plaintiff." *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)).

"Where a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law." *Brezler v. Mills*, 220 F. Supp. 3d 303, 321 (E.D.N.Y. 2016).[6] Summary judgment determinations are "generally appropriate in APA cases because the question [of] whether an agency's decision is arbitrary and capricious is a legal issue amenable to summary disposition." *Id.* The Court's review of an APA claim is "narrow and deferential" and limited to the administrative record. *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022). "[S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007).

The Court's task is therefore to decide the APA claims based on the administrative record "compiled by [the] agency when it made the decision" at issue. *Clifford v. U.S. Coast Guard*, 915 F. Supp. 2d 299, 307 (E.D.N.Y.), *aff'd*, 548 F. App'x

---

[6] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

23 (2d Cir. 2013).[7]  The Court analyzes the APA claim and equal-protection claim under the summary judgment standard.

### III. Discussion

**A.   The APA Claim Fails**

Robaid claims that the agencies acted arbitrarily and capriciously, in violation of the APA, in denying his I-130 petitions.[8]  This is because the agencies did "not weigh the evidence in the record," Compl. ¶ 7, and the denials were the result of "discriminatory I-130 adjudication procedures applied . . . to Yemeni-American I-130 petitioners."  *Id.* ¶ 11.

The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  Generally speaking, an agency must

---

[7] However, "a party may seek to supplement the administrative record by showing that materials exist that were actually considered by the agency decision-makers but are not in the record as filed." *Saleh v. Blinken*, 596 F. Supp. 3d 405, 413 (E.D.N.Y. 2022).  "Alternatively, a court may undertake an 'extra-record investigation' where 'there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers,' or 'where the absence of formal administrative findings makes extra-record investigation necessary in order to determine the reasons for the agency' decision." *Id.* (quoting *Hoffman*, 132 F.3d at 14).

[8] Robaid is challenging USCIS's denials of the Form I-130 petitions, not the decisions of the consular officers at the Embassy in Djibouti.  The USCIS decision is reviewable, but any decision by a consular officer housed within the State Department, such as the denial of a visa, is not.  *See Coniglio v. Garland*, 556 F. Supp. 3d 187, 201 (E.D.N.Y. 2021) ("USCIS's decision to approve and forward a petition is legally distinct from a consulate's decision to vise a passport, and . . . the Doctrine of Consular Nonreviewability shields only the latter decision from judicial review."); *Muñoz*, 602 U.S. at 925 (Sotomayor, J., dissenting on other grounds) ("Consular officers fall under the State Department, not DHS, which oversees USCIS.").

"articulate a satisfactory explanation for its action including
a rational connection between the facts found and the choice
made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.
Co.*, 463 U.S. 29, 43 (1983).  An agency decision is arbitrary
and capricious only if the agency has (1) "relied on factors
which Congress has not intended it to consider," (2) "entirely
failed to consider an important aspect of the problem," (3)
"offered an explanation for its decision that runs counter to
the evidence before the agency," or (4) "is so implausible that
it could not be ascribed to a difference in view or the product
of agency expertise." *Am. Cruise Lines v. United States*, 96
F.4th 283, 286 (2d Cir. 2024).

        "In adjudicating Form I-130 petitions, USCIS has the
discretion to determine what supporting evidence is credible and
what weight to ascribe to it." *Almakalani v. McAleenan*, 527 F.
Supp. 3d 205, 214 (E.D.N.Y. 2021) (citing 8 C.F.R.
§ 204.1(f)(1)).  When a plaintiff "fail[s] to submit any
objective evidence to resolve his inconsistent statements," a
court may dismiss an APA claim.  *Risoli v. Nielsen*, 734 F. App'x
61, 63 (2d Cir. 2018); *see also Akinsuyi v. BIA*, No. 17-cv-1462,
2018 WL 4017579, at *6 (E.D.N.Y. Aug. 22, 2018) (dismissing APA
challenge to denial of I-130 after plaintiff failed to resolve
inconsistencies in petition).

USCIS's actions were not arbitrary or capricious.  As the complaint itself acknowledges, Robaid submitted two contradictory sets of documentation.  The earlier set contained a marriage certificate for Robaid and Asmaa that postdated the children's births, while the latter set contained a certificate predating them.  Bashar CAR 28, 31, 54; Ibrahim CAR 29, 32, 55.  The earlier set contained birth certificates that identified Almuraisi as the children's father (and used that name as the children's surname); the latter set identified Robaid as the father and referred to the children with *his* surname.  Bashar CAR 26, 49; Ibrahim CAR 27, 50.  *Robaid's own* initial I-130 submission, which he confirmed in his sworn statements, referred expressly to his "STEP-KIDS, BASHAR AND IBRAHIM."  Bashar CAR 37-41; Ibrahim CAR 38-42.

USCIS noted that Robaid later indicated "in writing" that Bashar and Ibrahim were his biological children, but given his lack of explanation, they were unable to determine that the new documentation adequately supported the petitions.  Bashar CAR 5; Ibrahim CAR 5.  The first set of documentation included a death certificate for Almuraisi that USCIS later determined was fraudulent.  Bashar CAR 10, 58; Ibrahim CAR 59.  (Indeed, Robaid's complaint concedes that the information originally submitted with the I-130s was inaccurate.  *See* Compl. ¶¶ 54, 58,

60.)  Robaid did not address this assessment in the second set of documentation he submitted.

In the end, though Robaid vigorously contended — both in the administrative proceeding and here — that the second set of documents is accurate, he has made no serious effort, either there or here, to *explain* the inconsistencies and anomalies. His complaint includes the conclusory allegation that the original documents were "mistakes*," id.* ¶ 58, but the problem remains that USCIS received no explanation — only conflicting, unreconcilable information — in the process of adjudicating his petitions.  Accordingly, Robaid has failed to plausibly allege that USCIS acted arbitrarily.

USCIS has not said that it is impossible for Bashar and Ibrahim to be Robaid's biological children.  They simply observed — correctly, and dispositively here — that Robaid's documentation was not reliable enough to support that conclusion.  With respect to Robaid's argument that USCIS applied discriminatory adjudication procedures to Yemeni-American petitioners, another judge in this district has noted the "well documented conclusion that Yemeni civil records are often inaccurate or unreliable," and concluded that "USCIS's changed policies and practices in adjudicating Yemeni Form I-130 Petitions, as set forth in the Yemen Guidance [Memorandum], are neither arbitrary nor an abuse of discretion."  *Almakalani*, 527

F. Supp. 3d at 220.  Accordingly, Robaid's arbitrary-and-capricious challenge fails.

**B.    The Equal Protection Claim Fails**

Robaid also brings a claim under the Equal Protection Clause.  He does not point to a specific right of action, but the APA provides a right of action permitting plaintiffs to challenge actions that are "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. §§ 702, 706.  Since his equal-protection claim challenges the denials of his I-130 petitions and the Yemen Guidance Memorandum, the Court construes it as brought under Section 706.

1.    Robaid Is Not Entitled to Discovery

In response to the defendants' summary-judgment motion, Robaid moved for discovery under Rule 56(d) with respect to the equal-protection claim.  Rule 56(d) allows for discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Specifically, "a court may supplement the [C]AR or consider extra-record materials in an APA case only under limited circumstances," *Saleh v. Blinken*, 596 F. Supp. 3d 405, 417 (E.D.N.Y. 2022), such as "when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such

investigation necessary in order to determine the reasons for the agency's choice." *Hoffman*, 132 F.3d at 14.

However, "the facts *on which plaintiff seeks discovery* cannot be considered by the Court unless they are already in the [C]AR." *Saleh*, F. Supp. 3d at 417 (emphasis added). Accordingly, because the existing record reveals no evidence of bad faith or reliance on documents outside the CAR, Robaid's motion for discovery is denied.

    2.    Robaid Lacks Standing to Bring an Equal
          Protection Claim Against the State Department

Robaid lacks standing to sue the State Department.  To have standing, a plaintiff must establish, among other things, a concrete and particularized injury that is fairly traceable to the defendant's conduct.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Traceability requires the plaintiff to show a "line of causation between the illegal conduct and injury" that is "not . . . too speculative or attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

Robaid's equal-protection claim is not traceable to the State Department because he is challenging the conduct of USCIS — a distinct agency.  In laying out his equal-protection claim, *see* Compl. ¶¶ 400-430, his allegations exclusively focus on the adjudication of I-130 petitions.  The State Department did not issue the Yemen Guidance Memorandum and did not

adjudicate his I-130 petitions.  To the extent Robaid challenges

general policies of the State Department, he fails to show that

demonstrate a "line of causation" between the policies the

adjudication of his petitions.  *All. for Hippocratic Med.*, 602

U.S. at 383.  Accordingly, the claim against the State

Department is dismissed.

> 3.   Robaid Does Have Standing for His Equal-
>      Protection Claims Against the Other Defendants

      The remaining defendants argue that Robaid does not

have standing to bring an equal protection claim against them,

either, under the Fifth Amendment.  They challenge the second

and third prongs of the standing analysis: traceability and

redressability.  *Lujan*, 504 U.S. at 560-61.  These challenges

fail.  In his prayer for relief, Robaid asks the Court to

"[e]njoin Defendants' policies, practices, and procedures

relating to processing and adjudication of I-130 petitions which

this Court finds violates Plaintiff['s] right to Equal

Protection."  Compl. at 93.  Given his broad allegations about

the policies that apply to Yemeni applicants and documents, and

the fact that he locates himself and his application in those

categories, *see, e.g.*, *id.* ¶¶ 410, 412, he has stated a fair

inference of traceability.  As to redressability, Robaid would

benefit from an injunction.  Accordingly, Robaid has standing to

pursue his equal-protection claim against the remaining
defendants.

    4.   <u>Robaid Fails to State an Equal-Protection Claim</u>

      "It is well established that the due process clause
of the Fifth Amendment embodies equal protection principles,"
even though the Amendment does not explicitly refer to equal
protection. *Disabled Am. Veterans v. U.S. Dep't of Veterans
Affs.*, 962 F.2d 136, 141 (2d Cir. 1992); *see also Washington v.
Davis*, 426 U.S. 229, 239 (1976) (the clause "contains an equal
protection component prohibiting the United States from
invidiously discriminating between individuals or groups").  To
state an equal-protection claim under the Fifth Amendment, a
plaintiff must allege facts showing one of the following: "(1)
that a law or policy is discriminatory on its face; (2) that a
facially neutral law or policy has been applied in an
intentionally discriminatory manner; or (3) that a facially
neutral statute or policy has an adverse effect and that it was
motivated by discriminatory animus." *Alharbi v. Miller*, 368 F.
Supp. 3d 527, 563 (E.D.N.Y. 2019), *aff'd in part*, 829 F. App'x
570 (2d Cir. 2020).

      This analysis is circumscribed, to an extent, in the
immigration context.  Given that "the admission and exclusion of
foreign nationals is a fundamental sovereign attribute exercised
by the Government's political departments largely immune from

judicial control," a rational-basis challenge to federal immigration policy will be found unconstitutional only if it is "inexplicable by anything but animus." *Trump v. Hawaii*, 585 U.S. 667, 706 (2018). Robaid argues that the Yemen Guidance Memorandum is facially discriminatory against Yemeni-American petitioners. Compl. ¶¶ 410-414. As the Court acknowledged above, however (and as other courts have before), the Yemen Guidance Memorandum's "additional procedures" are "rational," due to — among other things — the "uncontested premise that Yemeni civil records are unreliable." *See Almakalani*, 527 F. Supp. 3d at 220. And as the Supreme Court indicated in *Trump v. Hawaii*, a policy intended to prevent the "entry of nationals who cannot be adequately vetted" and to induce "other nations to improve their practices" will survive rational basis scrutiny. 585 U.S. at 706. Roabid's equal-protection claim fails.

C.    **The Declaratory Judgment Act Claim Is Dismissed**

Robaid requests "declaratory, injunctive, and other relief," and his third cause of action seeks relief under the DJA. Compl. ¶ 399. The DJA, 28 U.S.C. § 2201, permits declaratory judgment as a remedy for cases and controversies under federal jurisdiction. The DJA is neither an "independent cause of action" nor a source of substantive rights. *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *Almakalani*, 527 F. Supp. 3d at 227. Because Robaid's

claims otherwise fail, his action for declaratory judgment is dismissed.

## IV.  Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to the APA claim and equal-protection claim against the non-State Department defendants.  The equal-protection claim against the State Department is dismissed under Rule 12(b)(1).  The motion for discovery pursuant to Federal Rule of Civil Procedure 56(d) is denied.  Robaid's request for a declaratory judgment is dismissed for the reasons stated above.  The Clerk of the Court is respectfully directed to close the case.


SO ORDERED.




                                   /s/ Eric Komitee
                                  ERIC KOMITEE
                                  United States District Judge


Dated:    September 29, 2025
          Brooklyn, New York